Harold Tessler, J.
Petitioner seeks to invalidate the designating petition filed with the Board of Elections by respondent, Arthur A. Grey, Jr., a candidate for the Democratic party position of Assembly District leader, male, Thirteenth Assembly District, Part B, Queens County.
Respondent Grey filed with the Board of Elections a designating petition consisting of two volumes, volume I containing 177 sheets with 1,727 signatures and volume II, 56 sheets with 483 signatures, making a total of 2,210 signatures. The law requires 350 valid signatures.
At the close of the hearing, respondent moved to dismiss, amongst others, on the ground that assuming the petitioner’s allegations of fraud were true and the court so found, the court’s decision could only affect the 177 pages comprising 1,727 signatures (marked and filed as vol. I). Respondent argued that paragraph 2 of the petition which states: ‘ ‘ Respondent, Arthur a. grey, jr., filed a nominating petition consisting of 177 sheets, numbered one through one hundred seventy-seven, and purporting to bear 2,234 signatures ” confines the issue herein and the attack by this petitioner to those 177 sheets and the court is without power to consider testimony relating to the other 56 sheets containing 483 signatures (vol. II), and consequently those 483 signatures are not under attack herein and stand as valid. Respondent further points out in support of this contention that before the Board of Elections, petitioner filed objections and specifications addressed only to the 177 sheets and no others. The latter fact the petitioner concedes. Respondent concludes that since only 350 valid signatures are required by law for respondent’s designation, the petition must be dismissed.
Petitioner meets this proposition with the contention that despite his limitation in the pleadings of sheets 1 through 177, the court has the right to consider the proof as applicable to *95 the other 56 sheets because in fact they all comprise one petition and it is this entire petition that is under attack.
As to this question, I find the court has such summary and plenary powers under section 330 of the Election Law as to permit it to deem the allegations, as made, sufficient to confer jurisdiction on this court.
Petitioner urges two grounds upon this court: (1) that the respondent Grey made a false statement in his registration to the Board of Elections and for that reason should be stricken from the registration rolls and his companion party enrollment be cancelled pursuant to sections 331 and 332 of the Election Law; and (2) that the acts of respondent Grey, his brother, and original attorney of record who, as subscribing witnesses on some sheets, represented that certain signatures were affixed to the petition in their presence when, in fact, someone else signed, constitute such fraud so as to permeate the entire petition and render it invalid.
In seeking to invalidate the signatures, it is elementary that the petitioner has the burden of proof.
In support of the first ground, petitioner offered in evidence a transferral and reregistration card of the Board of Elections, dated October 10, 1959, stating that respondent Grey resided at 89-25 87th Street (first floor), Woodhaven (his present and bona fide residence on that date), and that he last voted in 1958 from 78-23 88th Avenue, Woodhaven. Petitioner submitted considerable proof to the effect that Grey actually resided at 78-11 Woodhaven Boulevard, which is located in Part A of the Thirteenth Assembly District, prior to October, 1959. This court has no doubt that respondent did in fact reside with his family and that this was his true address and domicile prior to October 5, 1959. The address of 78-23 88th Avenue, given in the reregistration card, is the home of respondent’s parents and although respondent visited' there, he did not reside or maintain a domicile there. However, it is equally clear from the proof submitted by the petitioner — and in fact petitioner so conceded for the record at the hearing — that the respondent presently resides and has resided since on or about October 5, 1959, at 89-25 87th Street, Woodhaven, which is located in Part B. It is petitioner’s contention that by giving the 78-23 88th Avenue address in the reregistration, the respondent committed a fraud so as to render his present registration and party enrollment flowing therefrom unlawful. I must reject this argument as a specious one. In giving the 78-23 88th Avenue address as his last voting address, the respondent was merely stating that he considered that he last voted from that address *96 and so he did and, if it be considered a voting address, such it was in the absence of any challenge by the Board of Elections. This trivia cannot be construed to be material or an act of fraud to confer upon the respondent any gain or advantage at this time in his seeking to be a candidate for district leader in the Thirteenth Assembly District, Part B. It is clear that the respondent has been since October 5, 1959, and is presently a bona fide resident of the district he seeks to represent and is lawfully registered from the Forty-fifth Election District of the Thirteenth Assembly District, Part B, and in fact appears to have voted from that same residence and election district in the last general election in the year 1959.
Petitioner made only one solitary offer of proof on the proposition that the entire petition should be invalidated by reason of its permeation with fraud. This proof was in the person of a handwriting expert w.ho testified that out of 7.1 sheets examined by him, he found 105 pairs of signatures where, in his opinion, both names were written by the same person. He did not examine the remaining 162 sheets and this cannot and will not presume that the signatures on those sheets are in any way irregular or tainted. No other proof of any kind was offered by the petitioner. None of the signers were called to state that they did not sign in the presence of the witness, no book of signatures for comparison was produced, nothing but the confined and limited testimony of the handwriting expert. Out of the 105 pairs of signatures referred to, 19 such pairs were witnessed by the respondent, 20 by his brother and 12 by the respondent’s former attorney. The remaining 54 pairs of signatures were witnessed by respondent’s workers, none of whom was shown to have any particularly close association with him. At this point, it should be noted that all of the 105 pairs of signatures had the same surname and were persons of the same household.
Petitioner argues that solely by reason of the fact that this respondent offers signatures procured by him, together with his brother and attorney associate, of approximately 50 persons that were not signed in their presence (and including the other workers a total of approximately 105 persons), the entire petition should be invalidated. Petitioner urges that this constitutes such a magnum of fraud so as to disqualify the respondent from seeking the party position of district leader. In support of this argument, the petitioner relies mainly upon the following cases: Matter of O’Connor v. Power (24 Misc 2d 918); Matter of Bloom v. Power (21 Misc 2d 885); Matter of Weisberger v. Cohen (22 N. Y. S. 2d 1011, affd. 260 App. Div. 392).
*97 I have read all of these cases and others thoroughly. In capsule form, they stand for the proposition that wholesale fraud, particularly when attributable to the candidate, is ground for the invalidation of a designating petition in toto, despite the fact that there be more than the legally required number of signatures individually untainted by any fraud or other irregularity. I find no fault with the general principles enunciated by these cases. However, I am convinced that none of them apply to the case at bar. There is no similarity in facts or proof. Without going into a long discussion of these cases, I shall point out only that all of the cases relied upon by the petitioner contain multiple allegations and an abundance of proof of fraud, forgery, deception, alterations, perjury, irregularities, mutilations and other practices designed to mislead and deceive the voters or knowingly and deliberately perpetrate a fraud.
I am persuaded that the following quotation from Judge Pette’s opinion in the O’Connor case (supra, p. 920), which is heavily relied upon by the petitioner herein, is a clear, concise and accurate statement of the law existent: ‘ ‘ The law seems well settled that before a petition will be invalidated on the ground of fraud, it must appear that the persons who signed the petition were induced to sign it by fraudulent representations, and that such fact must be established by the preponderance of the evidence at the hearing.”
Apart from the fact that proof is offered that approximately 100 persons in the same family signed for another and 50 of these were witnessed by the respondent, his brother or attorney, we have no other allegations of irregularity of any kind, none of fraud, none of perjury, none of forgery, none of deception, or any other form of irregularity.
To my mind this certainly is not the kind of fraud and wrongful conduct intended by the principles enunciated in those cases invalidating petitions on the ground of fraud permeation. It is, indeed, a simple thing to be aware of what happened in the question of the 105 signatures. The witness stood by while a wife signed for a husband or a son for his mother, etc. No witnesses were called or proof offered that any of these persons was not authorized to sign for the other, nor was any other proof offered as to the lack of genuineness of the signatures. To uphold the petitioner’s contention and invalidate the petition of the respondent on the narrow and flimsy proposition before us, would result in the disenfranchisement of the approximately 2,000 persons who signed the petition with no suspicion or proof of irregularity of any kind. This I find repugnant and contrary *98 to the intent and contemplation of the provisions of the applicable sections of the Election Law. For all of the foregoing reasons, the petition and proceeding is dismissed. Submit order.