[953 NYS2d 604]

In the Matter of SIMCHA FELDER, Appellant, v DAVID STOROBIN, Respondent, et al., Respondent. (Appeal No. 1.)

In the Matter of SIMCHA FELDER, Respondent, v DAVID STOROBIN, Appellant, et al., Respondent. (Appeal No. 2.)

Second Department, September 12, 2012

13

---

### APPEARANCES OF COUNSEL

*Kantor, Davidoff, Wolfe, Mandelker, Twomey & Gallanty, P.C.,*
New York City (*Lawrence A. Mandelker* and *Carrie E. Anderer*
of counsel), for appellant in appeal No. 1 and petitioner-
respondent in appeal No. 2.

*Conde & Glaser, LLP*, New York City (*Ezra B. Glaser* of
counsel), for respondent-respondent in appeal No. 1 and appel-
lant in appeal No. 2.

### OPINION OF THE COURT

DILLON, J.P.

The petitioner, Simcha Felder, commenced this proceeding in
the Supreme Court, Kings County, inter alia, to invalidate a pe-
tition designating David Storobin as a candidate for the nomina-
tion of the Republican Party as its candidate for the public of-
fice of the New York State Senator for the 17th Senatorial
District. Felder's petition alleged, among other things, that
Storobin had committed fraud in witnessing signatures and
that Storobin's designating petition was otherwise permeated
with fraud.

One thousand valid signatures were required for Storobin's
designating petition (*see* Election Law § 6-136 [2] [h]). Storob-
in's designating petition contained in excess of 2,000 signatures,
more than twice the number required. The Board of Elections
in the City of New York (hereinafter the Board of Elections)
rejected objections that were filed, on the ground that the objec-
tions were not properly served.

After Storobin's motion to dismiss the petition to invalidate
the designating petition was denied in an order dated August

10, 2012, Storobin filed an answer containing a counterclaim seeking to validate the designating petition. Felder filed a reply to the counterclaim, alleging that it was not timely verified. A special referee conducted a line-by-line examination of the designating petition, and concluded that it contained a sufficient number of valid and qualifying signatures. The Supreme Court then conducted a hearing, inter alia, on the invalidation claim, resulting in the final order appealed from, entered August 13, 2012, which denied the petition to invalidate and, in effect, dismissed the proceeding. Specifically, the Supreme Court denied the petition to invalidate, on the ground that Felder failed to establish, by clear and convincing evidence, that Storobin participated in or was chargeable with knowledge of fraudulent activity. The Supreme Court did not expressly address the counterclaim seeking to validate the designating petition. Felder appeals from the final order, and Storobin separately appeals from the order dated August 10, 2012. We dismiss the appeal from the order dated August 10, 2012, and affirm the final order.

## I. The Issak Signature and Address

One set of issues at the hearing concerned Storobin's witnessing of the designating signature of Michail Issak on the designating petition. The signature is visually difficult to decipher, and the residential address inscribed next to the signature has been shown to be that of Hilda Danger, who died two years prior to the date of the designating petition. Storobin testified at the hearing that, after personally witnessing the signature of Issak, Storobin later filled out residential address information for the signatures he had obtained. In Issak's case, Storobin could not decipher Issak's signature, except for what he believed to be an "H" in "Michail" and, upon reviewing voter lists and through a process of elimination, he mistakenly placed Hilda Danger's name and address next to Issak's signature, believing the information to be accurate at the time. Issak testified at the hearing that he did, in fact, sign the designating petition for Storobin, and identified his own signature on the document. The Supreme Court found Storobin's testimony as to the inscription of Danger's residential address to be credible. The Supreme Court concluded that, while the circumstances surrounding the placement of Danger's name and residential address on the designating petition may have revealed carelessness on Storobin's part, that conduct did not constitute intentional fraud.

## II. Five Alleged Forged Signatures

Felder alleged that five signatures witnessed by Storobin were actually forged: those of Anatoliy Smolyanskiy, Edith Garcia, Arnaldo Garcia, Carina Tretyakov, and Lyudmila Tretyakov. Jeffrey Luber, a handwriting expert called as a witness by Felder, testified that each of these five signatures was forged, based upon his comparison of the designating petition with the voter registration records maintained by the Board of Elections. He described the differences in signatures as great and glaring. With respect to four of the signatories, the examplar signatures from the Board of Elections were 28 years old, 20 years old, 19 years old, and 12 years old, respectively. Luber conceded in his testimony that a person's signature may change with time and age. Felder did not call as witnesses any of the voters in question, and did not produce comparative signature evidence more recent than that set forth in the records obtained from the Board of Elections.

Storobin called Smolyanskiy, the fifth signatory, as a witness. Smolyanskiy identified his signature on the designating petition, and recalled signing his name to it in the presence of Storobin and another person. Storobin testified that he personally obtained the signatures at issue. The Supreme Court credited Smolyanskiy's and Storobin's testimony as to Smolyanskiy's signature.

As to the remaining four signatures, the Supreme Court found Luber's testimony insufficient to meet the burden of proof for fraud, particularly in light of, inter alia, the significant gaps in time between the dates of the voters' examplar signatures from the Board of Elections and the signatures on the designating petition. The Supreme Court also found the testimony of Storobin to be credible.

## III. Legal Analysis

A candidate's designating petition will be invalidated on the ground of fraud if there is a showing that the entire petition is permeated with fraud (*see Matter of Volino v Calvi*, 87 AD3d 657, 658 [2011]; *Matter of Harris v Duran*, 76 AD3d 658, 659 [2010]; *Matter of Drace v Sayegh*, 43 AD3d 481 [2007]). However, where a candidate's own knowledge or activities are at issue, candidates are held to a higher standard under the Election Law than noncandidates. Absent permeation with fraud, a designating petition may be invalidated where the candidate has participated in or is chargeable with knowledge of the fraud

(*see Matter of Lavine v Imbroto*, 98 AD3d 620 [2012]; *Matter of Volino v Calvi*, 87 AD3d at 658; *Matter of Leonard v Pradhan*, 286 AD2d 459 [2001]), even if there is a sufficient number of nonfraudulent signatures on the remainder of the designating petition (*see Matter of Tapper v Sampel*, 54 AD3d 435 [2008]; *Matter of Drace v Sayegh*, 43 AD3d at 482). However, a single instance of fraud by a candidate does not necessarily require the invalidation of an entire otherwise-sufficient designating petition as a matter of law (*see Matter of Perez v Galarza*, 21 AD3d 508, 509 [2005] [denial of petition to invalidate a designating petition where only one witness testified that the candidate was not present to witness her designating signature]).

█ The Supreme Court applied the proper evidentiary standard for fraud, that of clear and convincing evidence (*see Matter of Lavine v Imbroto*, 98 AD3d at 620; *Matter of Finn v Sherwood*, 87 AD3d 1044, 1045 [2011]; *Matter of Testa v DeVaul*, 65 AD3d 651 [2009]; *Matter of Robinson v Edwards*, 54 AD3d 682, 683 [2008]; *Matter of Hennessey v DiCarlo*, 21 AD3d 505, 506 [2005]).

We are not persuaded that the existence of a seemingly illegible signature of one person upon a designating petition, alongside a name and residential address of another person, meets Felder's prima facie burden with respect to a showing of fraud, as the documentary evidence fails to establish by clear and convincing evidence that the single irregularity was a product of "knowing" or "intentional" fraud on the part of the witnessing candidate. It has been understood since at least the time of Blackstone that fraud requires proof of an intent to deceive (*see* 3 William Blackstone, Commentaries on the Laws of England at 716 n 6 [George Chase, 3d ed American Students' Blackstone 1894]). The requirement that proof of wrongful intent is necessary to sustain a fraud cause of action is clearly ensconced in New York law (*see Jo Ann Homes at Bellmore v Dworetz*, 25 NY2d 112, 119 [1969]; *Smith v Ameriquest Mtge. Co.*, 60 AD3d 1037, 1039 [2009]; *Cash v Titan Fin. Servs., Inc.*, 58 AD3d 785, 788 [2009]; *Selinger Enters., Inc. v Cassuto*, 50 AD3d 766, 767 [2008]; *Heaven v McGowan*, 40 AD3d 583, 584 [2007]; *Watson v Pascal*, 27 AD3d 459 [2006]; *Leno v DePasquale*, 18 AD3d 514, 515 [2005]). Felder failed to establish the requisite wrongful intent merely by adducing evidence of Storobin's careless and erroneous placement of Danger's name and address upon the designating petition.

In our view, our dissenting colleague's analysis advocates a new, strict liability rule to be applied against candidates who

make unintentional or sloppy errors in their witness statements. The problem with any such strict rule is that it fails to account for the basic and necessary elements of fraud that must be established by clear and convincing evidence to warrant the invalidation of a candidate's entire designating petition. Moreover, such a rule would be inconsistent with the case law of this Judicial Department that forgives good-faith error by candidates in connection with the execution of their witness statements (*see Matter of Bonner v Negron*, 87 AD3d 737, 739-740 [2011]; *Matter of McHugh v Comella*, 307 AD2d 1069, 1070 [2003]).

Even had Felder met his prima facie burden, Issak's testimony identifying his signature on the designating petition, and Storobin's testimony explaining the careless but good-faith manner in which the incorrect address was placed upon the document, overcame Felder's proof, as the Supreme Court found the combined and consistent testimony of Issak and Storobin to be credible.

The Supreme Court's determination regarding the presence of Danger's name and residential address alongside Issak's signature is based upon its appropriate assessment of witness credibility. A hearing court's assessment of the credibility of witnesses is entitled to deference, as that court had the advantage of hearing and seeing the witnesses (*see Matter of Finn v Sherwood*, 87 AD3d at 1045; *Matter of Harris v Duran*, 76 AD3d at 659; *Matter of Drace v Sayegh*, 43 AD3d at 482; *Matter of Morini v Scannapieco*, 286 AD2d 459 [2001]; *Matter of Walkes v Farrakhan*, 286 AD2d 464 [2001]; *McGuirk v Mugs Pub*, 250 AD2d 824 [1998]). Here, the circumstances surrounding the presence of Danger's name and residential address on the designating petition, while unusual, are also plausible if the testimony of the voter, Issak, and of the candidate, Storobin, is found to be credible. Issak's signature was authentic, and there is no evidence that Storobin failed to personally witness its subscription (*see Matter of Haskell v Gargiulo*, 51 NY2d 747 [1980]; *Matter of Bonner v Negron*, 87 AD3d at 738; *Matter of Cirillo v Gardiner*, 65 AD3d 638, 639 [2009]). To the extent that our dissenting colleague believes that there is a sufficient basis for reaching an entirely different explanation for the presence of Danger's name and residential address upon the designating petition, such explanation, in our view, is speculative and conjectural, and falls short of satisfying the clear and convincing evidence standard that must be applied by the courts on both the trial and appellate levels. If, as found by the Supreme

Court, the insertion of Danger's name and residential address on the designating petition was a product of mere carelessness, and was not an intentional misrepresentation by the candidate, then the Supreme Court properly concluded that Storobin did not engage in such knowing and intentional fraud as would warrant the invalidation of his entire designating petition.

As to the remaining contested signatures, Luber's expert testimony that Smolyanskiy's signature was forged, followed by Smolyanskiy's testimony that the designating petition had, in fact, been signed by him, eviscerated Luber's credibility as an expert witness on the issue of the authenticity of Smolyanskiy's signature, and allowed the Supreme Court to find Luber's testimony to be "unconvincing and questionable, at best" as to the remaining designating signatures as well. Again, we defer to the Supreme Court's assessment that Luber's testimony was not credible.

Upon discounting the expert handwriting testimony, the Supreme Court properly examined and compared the signatures on the designating petition to the voters' signatures on file with the Board of Elections. In our view, the designating signatures of Edith Garcia and Lyudmila Tretyakov match the signatures on their voter registration cards, and the designating signature of Carina Tretyakov, while appearing incomplete, is consistent with the signature on her voter card to the extent that the portion of the designating signature can be viewed. The designating signature of Arnaldo Garcia arguably reflects differences with the signature on his registration card, but, as noted by the Supreme Court, all of the contested signatures were placed upon Storobin's designating petition many years after the voters' registration forms were completed and signed, and, in Arnaldo Garcia's case, a full two decades later. Even if any signature were written by someone other than the identified voter, there is no evidence that Storobin had actual knowledge of such circumstances so as to allow us to conclude that he personally engaged in fraud. The documentary signature evidence before the Supreme Court, once the expert witness testimony to the contrary is discounted, fails to satisfy Felder's prima facie burden of establishing, by clear and convincing evidence, that any of the contested signatures are fraudulent (see Matter of Bonner v Negron, 87 AD3d at 739; see also Matter of Cirillo v Gardiner, 65 AD3d at 639).

## IV. The Team Method of Signature Gathering

■ Our dissenting colleague suggests that fraud arose in Storobin's signature-gathering process because of the manner in which the "team method" was utilized in gathering various signatures for Storobin's designating petition. The team method, however, has been judicially recognized as valid (*see Matter of Rodriguez v Harris*, 51 NY2d 737, 738-739 [1980, Fuchsberg, J., concurring]). Storobin's only testimony regarding the team method was that members of the team, accompanied by the candidate, were either "getting" or "witnessing" signatures. No further testimony or other evidence was ever developed on this point, and Storobin's testimony hardly constitutes a concession or evidence that he participated in any fraudulent conduct.

## V. Remaining Issues

■ The Supreme Court did not err in excluding testimony regarding allegedly fraudulent signatures that were not identified in Felder's pleading (*see* CPLR 3016 [b]; *see generally Matter of Belak v Rossi*, 96 AD2d 1011 [1983]).

The appeal from the order dated August 10, 2012, must be dismissed, as the right of direct appeal therefrom terminated with the entry of the final order in the proceeding (*see Matter of Aho*, 39 NY2d 241, 248 [1976]; *Matter of Ragusa v Ognibene*, 92 AD3d 683, 683 [2012]; *Matter of Myers v Baisley*, 65 AD3d 649, 649-650 [2009]; *Matter of Rettaliata-Tepe v Katz*, 46 AD3d 850, 851 [2007]). Although the issues raised on Storobin's appeal from the order dated August 10, 2012, are brought up for review on Felder's separate appeal from the final order entered August 13, 2012 (*see Matter of Rettaliata-Tepe v Katz*, 46 AD3d at 851), those issues have been rendered academic in light of our determination of the appeal from the final order.

Felder's remaining contentions are without merit.

Accordingly, in light of the foregoing, the Supreme Court properly denied the petition to invalidate Storobin's designating petition and, in effect, dismissed the proceeding.

We reject Storobin's request to assess costs and sanctions against Felder for prosecuting a frivolous appeal, as the circumstances do not warrant such action.

The appeal from the order dated August 10, 2012, is dismissed, and the final order entered August 13, 2012, is affirmed.

AUSTIN, J. (concurs in part and dissents in part, and votes to

dismiss the appeal from the order dated August 10, 2012, reverse the final order entered August 13, 2012, grant the petition of Simcha Felder to invalidate the designating petition of David Storobin, and direct the Board of Elections in the City of New York to remove the name of David Storobin from the appropriate ballots, with the following opinion).

Candidates for public office who carry petitions in furtherance of their candidacy are held to a higher standard than campaign volunteers who collect signatures for their candidate. Generally, to invalidate the designating petition of a candidate on the basis of fraud, there must be a showing that the entire designating petition is permeated with fraud (*see Matter of Ferraro v McNab*, 60 NY2d 601 [1983]; *Matter of Lavine v Imbroto*, 98 AD3d 620 [2012]; *Matter of Volino v Calvi*, 87 AD3d 657, 658 [2011]; *Matter of Drace v Sayegh*, 43 AD3d 481, 482 [2007]; *Matter of Leonard v Pradhan*, 286 AD2d 459 [2001]). However, where there is a finding that "the candidate has participated in or is chargeable with knowledge of fraud in procuring signatures for a designating petition, even if there is a sufficient number of valid signatures independent of those fraudulently procured," the candidate's designating petition should be invalidated (*Matter of Drace v Sayegh*, 43 AD3d at 482; *see Matter of Volino v Calvi*, 87 AD3d at 658; *Matter of Cirillo v Gardiner*, 65 AD3d 638, 639 [2009]; *Matter of Tapper v Sampel*, 54 AD3d 435, 436 [2008]; *Matter of Leonard v Pradhan*, 286 AD2d 459 [2001]).

Here, based upon the admissions of David Storobin and the record of the evidentiary hearing held in connection with this matter, I believe that there is clear and convincing proof to establish that Storobin engaged in fraud in the procurement of signatures on his designating petition for the Republican nomination for the New York State Senate for the 17th Senatorial District so as to warrant the invalidation of his designating petition, even though the designating petition otherwise had a sufficient number of valid signatures[1] (*see Matter of Drace v Sayegh*, 43 AD3d 481 [2007]; *Matter of Leonard v Pradhan*, 286 AD2d 459 [2001]; *Matter of Flower v D'Apice*, 104 AD2d 578 [1984], *affd* 63 NY2d 715 [1984]). Accordingly, I respectfully dissent.

There are several examples of fraudulent conduct on the part of Storobin wherein he directly or indirectly failed to honor a

---

1. The minimum number of signatures required to qualify for the State Senate is 1,000 (*see* Election Law § 6-136 [2] [h]). More than 1,400 signatures were ultimately validated.

witness's oath on the designating petition by materially misstating information relating to the name and address of the signatory whose signature he claimed to have witnessed, obtaining the signature of a voter who is not a registered Republican, and obtaining signatures which do not correspond with the putative signatory's voter registration form, commonly known as a buff card. In addition, he was aware of the fact that, and testified at the hearing that, campaign volunteers executed witness statements with regard to signatures they did not witness.

## The Signature of Michail Issak

It is undisputed that on line 1 of sheet 30 of volume 201 of his designating petition, Storobin obtained the signature of Michail Issak, who resides at 1569 Ocean Parkway, apartment 1F, Brooklyn. Although Storobin testified at the hearing that he utilized a "walk list" of registered Republicans which was organized by assembly district, election district, and address, Issak was not on the list. In fact, he is not an American citizen. Storobin nonetheless procured and witnessed Issak's signature. Had that alone been Storobin's error, then I agree with my colleagues that the signature should be invalidated and no further action taken.

Storobin, however, despite his professed usual practice of printing the signing voter's name underneath the signature, did not do so in this case, even though he did add a partial address in the space provided for the signatory's address. Several hours later, when Storobin reviewed sheet 30, he did not remember who signed the designating petition or at what address the signature was obtained. Indeed, the Issak signature, Storobin testified, was illegible, although he thought the first letter was an "H."[2] So, utilizing the walk list as his reference, he "guessed" that one Hilda Danger signed line 1 of sheet 30 of his designating petition. Storobin then printed "Hilda Danger" under the Issak signature. The problem was that Danger was not listed as residing at 1569 Ocean Parkway, as Storobin initially noted on sheet 30. According to the walk list, she resided at 1576 Ocean Parkway. Undaunted, as noted by the Supreme Court, Storobin admitted changing the address on sheet 30 to conform with that of Danger without any factual basis for doing so. It is undisputed that, at the time Storobin made his guess and changes on sheet 30, Danger had been dead for approximately two years.

---

2. Storobin testified, "So, no, I could absolutely not recall looking at the signature who it is because, like I said, it is scribbled beyond the first letter."

Nevertheless, Storobin knowingly completed and executed the "Statement of Witness" at the foot of sheet 30 of the designating petition, as he was required to do pursuant to Election Law § 6-132 (2), which, in relevant part, states:

## "STATEMENT OF WITNESS

"I, . . . . . . . . . . . . . . . . . . (name of witness) state: I am a duly qualified voter of the State of New York and am an enrolled voter of the . . . . . . . . . . . . . . . . . . . party. I now reside at . . . . . . . . . . . . . . . . . . . . . (residence address).

"Each of the individuals whose names are subscribed to this petition sheet containing . . . . . . . . . . . . . . . . . . . . (fill in number) signatures, subscribed the same in my presence on the dates above indicated and *identified himself or herself to be the individual who signed this sheet.*

"I understand that *this statement will be* accepted for all purposes as *the equivalent of an affidavit* and, if it contains a material false statement, shall subject me to the same penalties as if I had been duly sworn" (emphasis added).

This statement was executed by Storobin himself. Thus, the undisputed facts, when read in the context of the Statement of Witness being the equivalent of an affidavit, present a most troubling scenario. It is plain that Danger did *not* identify "herself to be the individual who signed this sheet" and the signature was *not* procured at the address indicated. By admitting that he "guessed" as to who signed sheet 30, and then swearing to the truth of his guess, as well as altering the address where the signature was procured, Storobin admitted making a materially false statement under oath.[3] There is nothing speculative or conjectural about these findings or their implications for the integrity of the petition process.

---

**3.** Storobin's testimony that he only discovered his "mistake" when he received a call from a newspaper reporter about obtaining the signature of a dead person, and that he figured out his "mistake" by retracing his steps on July 6, 2012, when he "witnessed" the Issak/Danger signature, is disingenuous inasmuch as it highlights that he had the ability on July 6, before signing the false Statement of Witness, to figure out who the actual signatory was. Instead, he cavalierly allowed a sworn guess to substitute for the due diligence which would have permitted the preparation of an accurate petition page or, since there was only the one signature on the page, its omission from the packet of petition pages filed with the Board of Elections in the City of New York.

An oath is "[a] solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound to a promise" (Black's Law Dictionary 1101 [8th ed 2004]; see CPLR 2309 [b]). The intent of CPLR 2309 is to ensure that the taking of an oath is "an unequivocal act of assent to tell the truth" (2d Preliminary Rep of Advisory Comm on Prac and Pro, 1958 NY Legis Doc No. 13 at 204; see Penal Law § 210.00 [1] [defining "oath" as "an affirmation and every other mode authorized by law of attesting to the truth of that which is stated"]).

In my opinion, Storobin's admitted material misrepresentations violated his oath as a subscribing witness that cannot be excused, as his counsel urges, based upon his status as an emigre from foreign shores, as an upset winner in a recent special election for the Senate seat he now seeks to retain, or, as his counsel put it, one who was inexperienced and was merely caught up in the "frenzy" of the petitioning season, and consequently made an honest, innocent mistake.[4] To compound the fraud, Storobin is an attorney who should have been guided by ethical constraints (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 8.4 [b], [c]).[5] The courts should not tolerate the submission of a materially false affidavit or affirmation from an attorney whose factual assertions were based upon a "guess" (see 22 NYCRR 130-1.1 [c]). Relying upon the fact that Issak did sign the petition misses the point. Storobin had, and violated, his statutory duty to truthfully report that Issak signed sheet 30 at the originally indicated address. He abrogated that duty by guessing as to who signed, altering the designating petition as to where it was signed, and then falsely swearing to the truth of his admitted guess and alteration.

The Board of Elections in the City of New York, and ultimately the voters who must necessarily rely upon the accuracy of the designating petitions submitted, as well as the candidates they purport to nominate, cannot be misled by a candidate playing fast and loose with the integrity of the nominating process.

---

4. Such a contention runs counter to Storobin's testimony that he had a "usual" practice of printing a signatory's name under his or her signature shortly after its subscription. Plainly, Storobin was not a political neophyte deserving of the benefit of the doubt he sought and obtained from the Supreme Court.

5. Indeed, were Storobin a judge, this singular violation would justify his removal from the bench since he was guilty of false swearing based upon the witness statement he signed (see Matter of Heburn, 84 NY2d 168, 171 [1994]).

Yes, mistakes happen. No designating petition is pristine. However, when a knowing error is made by a candidate, this Court should not dismiss it as a "careless" error demonstrating "questionable judgment," as described by the Supreme Court, which negates both "intentional fraud" and the violation of his or her oath. Since the swearing of an oath is a thoughtful, knowing act, I respectfully disagree with my colleagues in the majority. Storobin demonstrated a "wrongful intent" when he swore to the truth of the contents of sheet 30. I can discern no good faith in the manner in which Storobin altered, and swore to the truth of, sheet 30.

On this basis alone, the designating petition should have been invalidated (*see Matter of Leonard v Pradhan,* 286 AD2d at 459 ["Where, as here, the candidate himself, as a subscribing witness, has participated in the fraud, the petition should be invalidated"]; *Matter of Flower v D'Apice,* 104 AD2d at 578 [designating petition invalidated where candidate conceded that an individual identified on his designating petition did not sign the petition, and that the candidate knew of this irregularlity]; *cf. Matter of Tapper v Sampel,* 54 AD3d at 435-436 [candidate admitted that witness statements on designating petitions did not comply with Election Law § 6-132 (2)]).

### The Other Contested Signatures

The petitioner, Simcha Felder, identified various signatures on the petitions witnessed by Storobin which bore a significant dissimilarity with the signatures of the signatories subscribed on their buff cards. In furtherance of his claim of candidate fraud, Felder called, as an expert witness, Jeffrey Luber, a forensic handwriting expert, who opined that, based on various marked disparities between certain signatures on the designating petition and those on corresponding buff cards, those signatures on the designating petition were likely not authentic.

By doing so, Felder satisfied his burden of proof in support of his petition to invalidate Storobin's designating petition by clear and convincing evidence with regard to each disputed signature (*see* PJI 1:64). Thus, it was incumbent on Storobin to come forward with evidence to demonstrate that the contested signatures he claimed to have obtained were, in fact, subscribed by the voters indicated. Storobin failed to do so, except with regard to alleged signatory Anatoliy Smolyanskiy, who was called to the stand by Storobin, and testified that it was his signature on the designating petition despite the visual variance

between that signature and that on his buff card, and despite Luber's testimony. During the hearing, Smolyanskiy executed two dramatically different versions of his signature. Thus, solely as to the Smolyanskiy signature, Luber's claim of lack of authenticity was disproved.

Although he satisfied his burden with regard to Smolyanskiy, Storobin never called Arnaldo Garcia, Lyudmila Tretyakov, and Carina Tretyakov to testify as witnesses, despite the fact that, based upon a simple visual analysis and without the need for expert testimony, each of their signatures on the designating petition varied greatly from those on their buff cards.[6] Upon his examination, Luber concluded that their signatures were forgeries. Luber's testimony in this respect was not refuted by the signatories or Storobin.

Nevertheless, while noting the differences in the signatures, the Supreme Court ascribed the differences to the passage of time, and upheld the authenticity and, hence, the validity of the signatures without testimony relating to them. Such differences might well have negated Felder's prima facie showing by clear and convincing evidence that these remaining contested signatures were not authentic (see Matter of Drace v Sayegh, 43 AD3d at 482).

Based upon Storobin's admittedly false witness statement relating to the Issak/Danger signature, the Supreme Court's determination to accept Storobin's testimony that he witnessed those signatures was erroneous. While this Court accords great deference to the trier of the fact, who has had the opportunity to view the witnesses (see Matter of Drace v Sayegh, 43 AD3d at 482), the Court should nonetheless employ common sense in considering the totality of the testimony in context. That is, having falsely sworn to the truth of a designating petition, Storobin was not entitled to a finding of credibility (see PJI 1:22 [Falsus in Uno]). Further, the fact that Luber, as an expert, was mistaken about Smolyanskiy's signature should not negate his testimony with regard to the other contested signatures, which, upon a comparison of the designating petition with the buff cards, were revealed to be dramatically dissimilar.

In addition, the signature of Edith Garcia on the designating petition also varied greatly from that on her buff card. However,

---

**6.** Admittedly, there were many years between the time when these voters registered and the time when they purportedly signed the designating petition which, as Luber explained, can cause a slight variance in the appearance of the signature.

her testimony would have not been helpful since she is an enrolled Democrat, whose name did not appear on Storobin's walk list. Thus, the witnessing of Edith Garcia's "signature" also violated Election Law § 6-132 (2), which requires that the subscribing witness be of the same political party as the party signing the designating petition.

### Team Method in Gathering Signatures

As noted by the majority, the "team method" of gathering signatures has been recognized by the Court of Appeals (*see Matter of Rodriguez v Harris*, 51 NY2d 737 [1980]). In his concurring opinion in that case, Judge Fuchsberg noted that such a signature-gathering method is "not per se improper or irregular" (*id.* at 738-739). Such recognition a fortiori implies that the signatures obtained by this method must still comport with the Election Law.

Here, in his testimony, Storobin revealed that he was aware that his volunteers gathered signatures while others signed the designating petition as witnesses. In addressing the Issak/Danger issue raised by sheet 30, Storobin testified:

> "Q: So, just to be clear, as you sit here today, your testimony is that when you completed the subscribing witness statement on sheet 30; you had no recollection that several hours earlier, a man signed the only sheet that you witnessed that only had one signature? Is that your testimony? . . .

> "A: It wasn't the only signature that we got at that time. I was walking with other volunteers that were getting different signatures. *If they weren't ones getting, so they were the ones witnessing.*

> "Sometimes it was me holding them, at which time I would be witnessing it. But, like I said, I was also witnessing for multiple days. On that day, which you were aware of" (emphasis added).

There was no further questioning on this subject by either side. On its face, Storobin's testimony acknowledged that signatures on the designating petition were not witnessed by the volunteer who procured the signature. While no designating petition pages were specifically identified as having been obtained in this manner, in my view, the clear import of Storobin's testimony supports a finding that he was a knowing participant in the fraudulent procurement of signatures on his designating petition,

and warrants its invalidation (*see Matter of Cirillo v Gardiner*, 65 AD3d at 639 [invalidation of a designating petition is appropriate where "the candidate had knowledge of the fraudulent manner in which the signatures were procured, and that he approved of such methods"]; *Matter of MacDougall v Board of Elections in City of N.Y.*, 133 AD2d 198, 198 [1987] ["when the candidate (him)self has participated in the fraud, the petition should be invalidated"]).

Based upon the totality of the circumstances of fraud presented, the Supreme Court erred in denying the petition to invalidate Storobin's designating petition. Accordingly, I respectfully vote to dismiss the appeal from the order dated August 10, 2012, reverse the final order entered August 13, 2012, grant the petition to invalidate Storobin's designating petition, and direct the Board of Elections to remove the name of David Storobin from the appropriate ballots.

Ordered that the appeal from the order dated August 10, 2012, is dismissed, without costs or disbursements; and it is further,

Ordered that the final order entered August 13, 2012, is affirmed, without costs or disbursements.

DICKERSON and ROMAN, JJ., concur with DILLON, J.P.; AUSTIN, J., concurs in part and dissents in part in a separate opinion.