Ryan v Honeywell (2025 NY Slip Op 50653(U))

[*1]

Ryan v Honeywell

2025 NY Slip Op 50653(U)

Decided on April 23, 2025

Supreme Court, Onondaga County

Kuehner, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 23, 2025
Supreme Court, Onondaga County

Chad M. Ryan and John Gooley, Petitioners,

against
Tammy M. Honeywell, Matthew E. Honeywell, and the Onondaga County Board of Elections, Respondents.

Index No. 003859/2025

CERIO LAW OFFICES, PLLC
Thomas J. Cerio, Esq.
Counsel for Petitioners
215 E. Jefferson St.
Syracuse, New York 13202
CALIFORNIA CIVIL RIGHTS DEPT.
Renee Paradis, Esq.
Counsel for Respondents Honeywell
1520 Carroll St., #3F
Brooklyn, New York 11213
ONONDAGA CO. DEPT. OF LAW
Benjamin M. Yaus, Esq.
First Chief Deputy County Attorney
Counsel for Respondent Bd. of Elections
421 Montgomery St.
Law Dept. Civic Center, 10th Fl.
Syracuse, New York 13202

Kevin P. Kuehner, J.

Currently before the Court is an application brought by Petitioners, Chad Ryan and John Gooley, as an Order to Show Cause, which was signed by the Court on April 21, 2025, and seeks an Order, pursuant to Election Law Articles 6 and 16, that invalidates the designating petition of Tammy Honeywell, who is a Democratic Party candidate for the office of Onondaga County Legislator for the 8th District. Petitioner, Chad Ryan, alleges that, on February 23, 2025, he was duly nominated at a convention of the Onondaga County Democratic Party to serve as the party's candidate for election to the same office and, as such, he is an aggrieved candidate pursuant to Election Law § 16-102(1). Respondent, Matthew Honeywell, is the spouse of Tammy Honeywell and it is alleged that Mr. Honeywell swore and attested to fraudulent signatures on the designating petition for Ms. Honeywell. 
On April 18, 2025, Respondents filed and served an Answer to the Petition and the Honeywell Respondents filed an opposition to the Order to Show Cause. The matter came to be heard on April 21, 2025, with Petitioners, Respondents, and respective counsel present. Respondent, Onondaga County Board of Elections, submitted two packages to the Court. The first package was the original designating petition consisting of a coversheet and 78 pages of signatures, which the Court marked for identification as Court's Exhibit 1. The second package contained the original general objection and specific objections filed by Respondent Gooley as well as two letters from the Onondaga County Board of Elections, the entirety of the petition objection page report, and a USB drive containing an audio recording of the hearing conducted on April 16, 2025. The second package was marked for identification as Court's Exhibit 2. Following oral argument, the Court reserved decision.
After careful consideration of the parties' respective submissions, the Court finds that Petitioners failed to meet their burden under the Election Law and, therefore, Petitioners' Order to Show Cause is denied, and the Petition is dismissed for the reasons set forth more fully below.
I. RELEVANT BACKGROUND
On April 4, 2025, Petitioner John P. Gooley, filed general objections to the designating petition of Tammy Honeywell. (Court's Ex. 2). On April 10, 2025, Petitioner Gooley filed objections and specifications ("specific objections") to that petition. (Id.) The Onondaga County Board of Elections did not sustain those objections and specifications, and Petitioner Gooley was so notified by letter dated April 11, 2025. (Id.) By that same letter, Petitioner was notified of a hearing scheduled for April 16, 2025. Following the hearing, the Onondaga County Board of Elections did not sustain the objections and specifications of Petitioner Gooley and determined that "the name of Tammy Honeywell, Onondaga County Legislator, 8th District — Democrat, will appear on the Primary Election ballot at the election to be held on June 24, 2025." (Id. [emphasis in original].) Because of the strict statute of limitations, Petitioner commenced this "anticipatory" proceeding on April 15, 2025. (NYSCEF No. 1, at ¶ 24 [Petition].) 
The Petition alleges that Mr. Honeywell fraudulently procured the signatures of James Cecile and Brian Collins on the designating petition for Ms. Honeywell by making intentional misrepresentations to induce them to sign. (NYSCEF No. 1, at ¶¶ 25, 28-29, 32, 37 [Petition].) Those two signatures appear on page 10, line 9 (Cecile) and page 60 line 2 (Collins) of the designating petition. (Court's Ex. 1). Each of those pages contain 19 other signatures which are [*2]not specifically and individually challenged in this action. (Id.)[FN1]
With respect to Mr. Cecile, it is alleged that, before signing the designating petition, Mr. Cecile inquired as to whether Ms. Honeywell had been nominated as a candidate by the Democratic Party and Mr. Honeywell responded that the Democratic Party had not nominated any candidates. (NYSCEF No. 1 at ¶ 33 [Petition]; see also NYSCEF No. 7 [Cecile Aff.].) Based on this representation, Mr. Cecile agreed to sign Ms. Honeywell's designating petition. (NYSCEF No. 7 [Cecile Aff.].) 
According to Mr. Cecile, after Mr. Honeywell departed his residence, he "checked to see if there was a nominated candidate and learned that [Petitioner] Chad Ryan was, in fact, the candidate nominated by the democratic party." (Id.) Upon learning this information, Mr. Cecile states in his affidavit that he contacted Mr. Honeywell to request that his signature be removed from Ms. Honeywell's designating petition and Mr. Honeywell agreed to do so. (Id.) However, Mr. Cecile states that he learned on April 1, 2025, that his signature was never removed and was included on the designating petition that was eventually filed. (Id.)
In a responding affidavit, Mr. Honeywell acknowledges that, when he spoke with Mr. Cecile about signing the designating petition, Mr. Cecile asked if Ms. Honeywell had been endorsed by the Democratic Party. (NYSCEF No. 20, at ¶ 4 [M. Honeywell Aff.].) Mr. Honeywell states that he was "confused" by this question and that it was his understanding "at that time" that the Democratic Party did not make endorsements in contested races until after the primary election. (Id.) Based on this understanding, Mr. Honeywell acknowledges informing Mr. Cecile that the Democratic Party had not endorsed a candidate for the office Ms. Honeywell is seeking. (Id.) Mr. Honeywell states that he shared the details of his conversation with Ms. Honeywell, who cautioned him to "be careful in answering any questions from voters which I did not understand[.]" (Id. at ¶ 5.) In her own affidavit, Ms. Honeywell confirms that Mr. Honeywell relayed the substance of the conversation with Mr. Cecile to her and that she admonished Mr. Honeywell to be careful when answering questions that he was unsure about. (NYSCEF No. 19, at ¶ 3 [T. Honeywell Aff.].)
Mr. Honeywell further acknowledges receiving a request from Mr. Cecile to remove his signature from the designating petition and that he agreed to do so. Mr. Honeywell did not share this request with Ms. Honeywell. (NYSCEF No. 20 at ¶ 6 [M. Honeywell Aff.].) However, Mr. Honeywell states that he "did not recall the message that next day and thus did not strike [Mr. Cecile's] name from the petition before it was submitted." (Id.) When Mr. Cecile subsequently contacted Mr. Honeywell about the failure to remove his signature from the petition, Mr. Honeywell states that he apologized for the mistake and later informed Ms. Honeywell about [*3]Mr. Cecile's request, which he "had forgotten about[.]" (Id. at ¶ 7.) Ms. Honeywell states that she did not learn about Mr. Cecile's request until after the petition had been submitted but "was alarmed and distressed upon learning this information." (NYSCEF No. 19, at ¶ 4 [T. Honeywell Aff.].) Ms. Honeywell contacted another Onondaga County Legislator and "had a brief conversation about the events." (Id.)
With respect to Brian Collins, the Petition alleges that, when asked by Mr. Collins who Ms. Honeywell's opponents were, Mr. Honeywell falsely stated that Ms. Honeywell was running unopposed. (NYSCEF No. 1, at ¶ 38 [Petition].) Mr. Collins' affidavit does not state that he agreed to sign Ms. Honeywell's designating petition based on this alleged misrepresentation or that any subsequent requests were made to have his signature removed. (NYSCEF No. 8 [Collins' Aff.]). In his responding affidavit, Mr. Honeywell acknowledges encountering Mr. Collins while Mr. Collins was walking along the side of a neighborhood street. (NYSCEF No. 20, at ¶ 8 [M. Honeywell Aff.].) Mr. Honeywell states that he greeted Mr. Collins with his "standard introduction and request" to sign the designating petition. (Id.) According to Mr. Honeywell, Mr. Collins agreed to sign the petition, but Mr. Honeywell does not recall Mr. Collins inquiring about Ms. Honeywell's opponents. (Id.) Nevertheless, Mr. Honeywell states that it was "my regular habit when collecting signatures to inform people that Tammy Honeywell was running against Chad Ryan." (Id.) Ms. Honeywell states that she did not learn about Mr. Collins' claim and Mr. Honeywell's alleged statement until she reviewed the Petitioners' Petition in this case. (NYSCEF No. 19, at ¶ 5 [T. Honeywell Aff.].)
Because Ms. Honeywell and Mr. Honeywell are married, the Petition alleges that Ms. Honeywell is chargeable with the knowledge of Mr. Honeywell's alleged fraudulent activity and the entirety of the designating petition must therefore be invalidated. (Id. at ¶ 41.) 
II. DISCUSSION
"Generally, a designating petition will only be invalidated on the ground of fraud where there is a showing that the entire designating petition is permeated with fraud. Even when the designating petition is not permeated with fraud, however, when the candidate has participated in or is chargeable with knowledge of the fraud, the designating petition will generally be invalidated even if there is a sufficient number of valid signatures independent of those [signatures] fraudulently procured. Fraud must be proved by clear and convincing evidence" (Dearmyer v Stachura, 217 AD3d 1454 [4th Dept 2023]). "CPLR 3016(b)'s requirement that fraud be pled with specificity applies to special proceedings under the election law. While CPLR 3016(b) does not require the pleadings to provide unassailable proof of fraud, the pleadings must still allege sufficient facts to allow the judge to infer a candidate's participation or knowledge of fraudulent conduct" (Thomas v Eugene, 41 Misc 3d 418, 422 [Sup Ct Kings Cnty 2013] [citing Robinson v Edwards, 54 AD3d 682, 683 [2d Dept 2008]; see also Vincent v Sira, 131 AD3d 787 [3d Dept 2015]). "While a finding of fraud in the designating process does not require proof of a nefarious motive on the part of the candidate, it does require proof of a knowingly or intentionally false statement" (Fatata v Phillips, 52 Misc 3d 701, 705; 2016 NY Slip Op 26156 [Sup Ct Albany Cnty 2016]; see also Grynspan v Moore, 194 AD3d 1393 [4th Dept 2021]; Burman v Subedi, 172 AD3d 1882 [3d Dept 2019]). 
Here, the Court agrees with the Honeywell Respondents that Petitioners have failed to meet their burden in establishing fraud within the meaning of the Election Law. (NYSCEF No. 16, at p. 3-4 [Respondents' Mem. of Law].) Specifically, the cases cited by Petitioners involve instances where certain acts called the legitimacy of the petition into question, such as where [*4]witnesses did not actually witness a signature or where the signature was not made by the voter in question (see, e.g., Saunders v Mansouri, 194 AD3d 1490, 1491-92 [4th Dept 2021]; Buttenschon v Salatino, 164 AD3d 1588 [4th Dept 2018]). As the Honeywell Respondents correctly point out, Petitioners have, at most, alleged that Mr. Cecile and Mr. Collins were fraudulently induced to sign the designating petition but that the signatures themselves are valid and the information contained in the petition was correct.[FN2]
In other words, there is no dispute that Mr. Honeywell truthfully affirmed that he witnessed the signatures being placed on the petition and that the signatures are actually from the identified eligible voters, such as Cecile and Collins. Within the four corners of Ms. Honeywell's designating petition, there is no allegation of fraudulent attestation or forged/false signatures. 
In considering whether fraud in the inducement is sufficient to vitiate a petition, the Court notes, and Petitioners conceded during oral argument, that there must still be an allowance for, inter alia, political speech, bolstering, and to engage in the "marketplace of ideas" when signatures are being collected. Moreover, the Court believes voters/signatories must bear some responsibility to independently verify and/or research the veracity of information they receive about candidates before choosing to sign their name to a nominating petition for their political party. Petitioners argue, however, that the alleged misrepresentations made by Mr. Honeywell were false, intentional, went beyond mere opinion or "puffery," and therefore rise to the level of fraud. The Court disagrees.
With respect to Mr. Collins, the Petition alleges, in conclusory fashion, that his signature was obtained "by way of intentional misrepresentation" because Mr. Honeywell responded "nobody" when Mr. Collins asked him who Ms. Honeywell's opponents are. (NYSCEF No. 1, at ¶¶ 37-38 [Petition].) No additional information is provided in support of the allegation that this statement—if communicated—was a knowingly or intentionally false statement and/or that it was made for the specific purpose of deceiving Mr. Collins to procure his signature. Perhaps most importantly, Mr. Collins' affidavit does not allege that Mr. Honeywell's alleged misrepresentation induced him to sign the petition. (NYSCEF No. 8.) Of particular note, there are no allegations that Mr. Collins' signature on the petition is not in fact his, that the petition itself contained incorrect information, or that the signature was improperly witnessed (cf. Testa v DeVaul, 65 AD3d 651, 653 [2d Dept 2009] ["it cannot be said that Volpe fraudulently induced the four witnesses to sign the DeVaul petition, as DeVaul's name was clearly printed on the petition and there was no evidence that Volpe made any material misrepresentations of fact"]; Haskell v Gargiulo, 51 NY2d 747 [1980] [circulator who, among other things, misrepresented to a signatory who did not speak English that the petition was for a different candidate committed [*5]fraud]).[FN3]

With respect to Mr. Cecile, the Court similarly finds that the Petition fails to allege a knowingly or intentionally false statement sufficient to vitiate the designating petition. Specifically, even assuming every statement in the Cecile affidavit is true, there is no evidence that Mr. Honeywell falsely stated, either knowingly or intentionally (as opposed to mistakenly or inadvertently), that the Democratic Party had not nominated a candidate for County Legislator in the 8th District. Furthermore, the failure to remove Mr. Cecile's signature upon his request does not require invalidation of the designating petition. Although it is arguable whether Mr. Honeywell should have honored Mr. Cecile's request as a courtesy, Petitioners cite no authority in support of the proposition that the failure to do so requires invalidation or otherwise constitutes fraud. 
Even assuming, arguendo, that the two signatures were fraudulently procured, there is not clear and convincing evidence that Ms. Honeywell is chargeable with knowledge of same. The Petition alleges that Ms. Honeywell is imputed with knowledge of fraud based on the mere fact that the Honeywells are married and reside together. (NYSCEF No. 1, at ¶ 40 [Petition].) However, the marital relationship, in and of itself, and without more, is insufficient to charge Ms. Honeywell with knowledge of alleged fraudulent conduct (see Overbaugh v Benoit, 172 AD3d 1874, 1876 [3d Dept 2019] ["we reject the speculation invited by petitioner that the marital relationship between the subscribing witness and Benoit, or the romantic relationship between Nicholas and Benoit's campaign manager, renders Benoit chargeable with knowledge of such fraud"]; cf. McHale v Smolinski, 133 AD2d 520 [4th Dept 1987]; Saitta v Rivera, 264 AD2d 490 [2d Dept 1999]).
Finally, the Court finds there is not clear and convincing evidence that the designating petition is permeated with fraud given that only two signatures have been challenged by the Petition (see Overbaugh, supra, 172 AD3d at 1876 [candidate's spouse falsely swore that he had witnessed a signature but "one fraudulent signature is not clear and convincing evidence that a designating petition is permeated with fraud"]; Matter of Felder v. Storobin, 100 AD3d 11, 16 [2d Dept 2012] ["a single instance of fraud by a candidate does not necessarily require the invalidation of an entire otherwise-sufficient designating petition as a matter of law"]; Ferraro v McNab, 60 NY2d 601 [1983] ["Absent a finding that the candidates' designating petition is permeated with fraud, a showing that some signatures were not properly obtained should not result in invalidation of the entire designating petition."]; Hennessy v Bd. of Elections of County of Oneida, 175 AD3d 1777, 1780 [4th Dept 2019]). 
During oral argument, Petitioners claimed that there are "dozens" of other signatories who would come forward with similar allegations of misrepresentation by Mr. Honeywell. No additional information was provided. The Court declines to schedule a hearing based on these [*6]unsubstantiated and conclusory assertions (see V.M. Paolozzi Imports, Inc. v Stefanini, 129 AD3d 1467 [4th Dept 2015] ["fraud cause of action was based on nothing more than speculation and unsubstantiated assertions"]). In any event, if the Court were to strike the Collins and Cecile signatures, or even all the signatures witnessed by Mr. Honeywell, a sufficient number of valid signatures remain to keep Ms. Honeywell on the ballot.[FN4]

ACCORDINGLY, it is
ORDERED that the relief requested in the Order to Show Cause is DENIED in its entirety; and it is further
ORDERED that the Petition is DISMISSED for failure to state a cause of action. 
This shall constitute the Decision and Order of the Court. The signing of this Decision and Order shall not constitute entry or filing under CPLR § 2220.
ENTER,
Dated: April 23, 2025
HON. KEVIN P. KUEHNER, J.S.C.

Footnotes

Footnote 1:Of the 78 pages of signatures which make up the designating petition, Mr. Honeywell witnessed pages 10, 35, 48, 50, 60, 63, and 65. (Court Ex. 1). Of the 540 signatures on the designating petition, 130 were witnessed by Mr. Honeywell. (Id.). The Onondaga County Board of Elections considered Petitioners' specific objections and invalidated 16 of the 130 signatures witnessed by Mr. Honeywell, which left a total of 114 valid signatures. Those signatures were ultimately counted toward the required minimum of 323. (Court's Ex. 2). After disposing of the specific objections, the Onondaga County Board of Elections determined that the designating petition contained 448 valid signatures, which is 125 signatures more than is required to appear on the primary election ballot for the office of Onondaga County Legislator, 8th District. (Id.).

Footnote 2:In researching this issue, the Court has identified case precedent from several decades ago in which a designating petition could be invalidated under former Election Law §§ 330-332 where "it must appear that the persons who signed the petition were induced to sign it by fraudulent representations" (O'Connor v Power, 24 Misc 2d 918, 920-21 [Sup Ct Queen Cnty 1959]; accord Contessa v Power, 25 Misc 2d 93, 97 [Sup Ct Queens Cnty 1960]). Similar provisions no longer appear to exist in the current version of the Election Law and Petitioners do not cite any in their papers.

Footnote 3:It is also of note that the Collins' signature at page 60 line 2 was invalidated by the Board of Elections on other grounds because Mr. Collins had already signed Respondent Ryan's designating petition. Therefore, even assuming, arguendo, that the signature was determined by this Court to be invalid based on Petitioners' argument that it was procured by fraud in the inducement, such a finding does not change the number of otherwise valid signatures. On the other hand, it appears that the Cecile signature at page 10, line 9, was validated and therefore counted toward the required 323 signatures.

Footnote 4:Specifically, 540 signatures were submitted by Ms. Honeywell toward a required minimum of 323. The Board of Elections determined 92 signatures were invalid for various reasons, which left 448. Of those 448 valid signatures, 114 were witnessed by Mr. Honeywell. Therefore, if all the signatures witnessed by Mr. Honeywell were eliminated, the petition would still have 334 valid signatures, thus qualifying Ms. Honeywell to be on the ballot.