■ In the Matter of FRANKLIN VALENTI et al., Appellants, v LARRY BUGBEE et al., as Commissioners of the Rensselaer County Board of Elections, Respondent, and JACK B. COX JR., Respondent. [930 NYS2d 319]—

Per Curiam.

Respondent Jack B. Cox Jr. filed an independent nominating petition with the Rensselaer County Board of Elections seeking nomination as the Revolutionary Party candidate for the office of Mayor of the City of Troy in the November 8, 2011 general election. After objections were filed, petitioners commenced this proceeding to invalidate Cox's independent nominating petition on various grounds, including fraud. Following a hearing, Supreme Court dismissed the petition. Petitioners appeal.

Courts will invalidate an independent nominating petition if the challengers show "that the entire petition is permeated with fraud or that the candidate participated in, or can be charged with knowledge of, fraudulent activity" (*Matter of Kraham v Rabbitt*, 11 AD3d 808, 809 [2004]; *see Matter of Nolin v McNally*, 87 AD3d 804, 805 [2011]). These are alternative grounds; the fraud need not permeate the entire petition if the candidate was involved with or knew of the fraud, and the petition may be invalidated even if it contains "a sufficient number of valid signatures independent of those fraudulently procured" (*Matter of Drace v Sayegh*, 43 AD3d 481, 482 [2007]; *see Matter of Tapper v Sampel*, 54 AD3d 435, 436 [2008], *lv denied* 11 NY3d 701 [2008]). The parties challenging the petition must demonstrate the existence of fraud by clear and convincing evidence (*see Matter of Nolin v McNally*, 87 AD3d at 805; *Matter of Harris v Duran*, 76 AD3d 658, 659 [2010]).

Here, petitioners presented five witnesses who testified that signatures attributed to them were not their own. Four of them testified that they had given a family member permission to sign their names. The fifth witness testified that she signed the petition once, but a second signature attributed to her on another page of the petition was not hers. Cox, who gathered all of the signatures himself, testified that four of the testifying witnesses did not sign their names to the petition, at least three or four other signatures were also placed on the petition by proxy, and he had no explanation as to how the fifth witness's signature appeared twice. Cox testified that he did not solicit the proxy signatures, he realized that they were improper, family members simply affixed proxy signatures before he had an opportunity to object, and he purposely collected more signatures than necessary to compensate for those that might be invalid. Only 544 signatures were needed and Cox gathered 941. Despite these uncontested facts, Cox signed the witness state-

ment at the bottom of each page of the petition, which is "the equivalent of an affidavit," attesting that each person whose name appeared thereon had subscribed his or her name "in my presence" and "identified himself [or herself] to be the individual who signed this sheet" (*see* Election Law § 6-140 [1] [b]).

The testimony, including Cox's own, established by clear and convincing evidence that, on several pages of the petition, Cox signed the witness statements despite knowing that those statements were materially false (*see Matter of Flower v D'Apice*, 104 AD2d 578, 578 [1984], *affd* 63 NY2d 715 [1984]). There was no conflicting testimony at the hearing that would necessitate giving deference to a credibility determination by the trial court (*compare Matter of McHugh v Comella*, 307 AD2d 1069, 1070 [2003], *lv denied* 100 NY2d 509 [2003] [validating petition where trial court apparently accepted candidate's testimony that she mistakenly signed witness statement on one page of petition she had not witnessed, believing it was a different page of signatures that she had witnessed]). All of the witnesses agreed that the five signatures were not placed on the petition by the purported signers and Cox testified that he signed the witness statements although he had not actually witnessed several of the signatures being affixed to the petition by the purported signer in his presence. He then filed the petition containing those false statements and invalid signatures without informing the Board of Elections of any irregularity, and did nothing to correct those false statements until confronted with them at the hearing where his petition was challenged (*see Matter of Tapper v Sampel*, 54 AD3d at 436; *cf. Matter of Cirillo v Gardiner*, 65 AD3d 638, 639 [2009]). Although we do not ascribe any nefarious motive to Cox's conduct, his actions still constituted a fraud. Because the candidate participated in a fraud in procuring signatures on his independent nominating petition, we invalidate that petition and strike Cox's name from the ballot even though the petition contained a sufficient number of valid signatures (*see Matter of Drace v Sayegh*, 43 AD3d at 482; *Matter of Leonard v Pradhan*, 286 AD2d 459 [2001], *lv denied* 96 NY2d 718 [2001]; *Matter of Layden v Gargiulo*, 77 AD2d 933, 934 [1980]).

Peters, J.P., Lahtinen, Stein, McCarthy and Garry, JJ., concur. Ordered that the order is reversed, on the law, without costs, petitioners' application granted, and the independent nominating petition naming respondent Jack B. Cox Jr. as the Revolutionary Party candidate for the office of Mayor of the City of Troy in the November 8, 2011 general election is declared invalid.