OPINION OF THE COURT
Richard M. Platkin, J.
Petitioners Linda Fatata and Claudia Tenney bring this special proceeding pursuant to Election Law § 16-102 seeking an order: (1) declaring invalid the designating petition filed with respondent New York State Board of Elections (SBOE) purporting to designate respondent George Phillips as a candidate for the Republican Party in the primary election to be held on June 28, 2016 for the public office of Member, U.S. House of Representatives, 22nd Congressional District (office); and (2) restraining the SBOE from printing and placing the name of the respondent candidate on the ballot as a candidate for the office.
The order to show cause in this proceeding was made returnable on May 5, 2016. The respondent candidate filed an answer admitting certain of the factual allegations of the petition.[1] An evidentiary hearing was held on the return of the petition, post-hearing submissions were received on May 9, 2016, and this decision, order and judgment follows.
Background
The relevant facts are straightforward and essentially undisputed. A candidate seeking designation to the office must file a petition containing at least 1,250 valid signatures. The designating petition filed by the respondent candidate contained 1,885 signatures.
Petitioner Linda Fatata filed general and specific objections to the respondent candidate’s designating petition, alleging that two of the signatures were not signed by the voters themselves. Specifically, Fatata objected to the signatures of Anne Haynes (sheet 17, line 8) and Anthony Roma (sheet 38, line 20). According to affidavits submitted with the specific objections, Anne Haynes’s name was signed by her daughter, *703 Paula Haynes, and Anthony Roma’s name was signed by his wife, Mary Roma. As these signatures were collected and witnessed by the respondent candidate, Fatata claimed that the SBOE should invalidate the entire petition due to fraud.
In a determination dated May 4, 2016, the SBOE “rendered] no determination relative to the issues raised in [Fatata’s] objection,” stating that “allegations of fraud . . . require findings of fact and consideration of attendant circumstances [that] generally are beyond the ministerial scope of board review.”
Petitioners in this proceeding make essentially the same allegation of fraud. In an answer filed on May 4, 2016, the respondent candidate admitted that Paula Haynes signed for Anne Haynes based upon Anne’s representations that she was unable to sign and that her daughter held a power of attorney for her. The respondent candidate similarly admitted that Mary Roma signed on behalf of Anthony Roma based upon her representations that Anthony was incapacitated and that she held a power of attorney for him.
At the hearing, the respondent candidate was the only witness called to testify, and the records of the SBOE were the only documents received into evidence.[2] The respondent candidate testified that, while in the presence of both Anne and Paula Haynes, Anne stated that she wanted to sign the petition, but physically was unable to do so. Anne represented to the respondent candidate that her daughter held a power of attorney (POA), and she asked her daughter to sign the petition for her. There was no indication on the petition that the signature was made by Paula Haynes pursuant to a POA, and no copy of a POA was presented to the respondent candidate or annexed to the petition.
With respect to the Romas, the respondent candidate testified that he stopped at their home to encourage them to support his candidacy. After some discussion at the doorstep, Mary Roma indicated that both she and her husband wanted to sign his petition. After looking over at her husband, who apparently was within earshot and in close proximity, Mary Roma advised the respondent candidate that her husband was unable able to sign because of an incapacity. She further represented that she *704 held a POA that gave her the legal right to sign the petition for her husband and requested to do so. Mary Roma then signed her husband’s name to the petition without referring to or attaching the POA.
The respondent candidate further testified that he read and signed the statement of witness at the bottom of both petition sheets. In so doing, he attested that “[e]ach of the individuals whose names are subscribed to th[e] petition . . . subscribed the same in my presence on the dates above indicated and identified himself/herself to be the individual who signed th[e] sheet.” According to the respondent candidate, it was his understanding that a person holding a POA was legally entitled to affix the signature of the person who gave the POA, and it was as if the person who gave the POA were personally present before him signing his or her name to the petition.
Thus, based upon his understanding of powers of attorney, the respondent candidate maintains that he believed the witness statements to be true and correct when he signed them. While not an attorney, the respondent candidate testified that he had held a POA for a seriously ill family member and, in that connection, had received legal counsel regarding the “awesome power of a power of attorney.”
Analysis
“A court will invalidate a designating petition where the challenger establishes, by clear and convincing evidence, that the entire petition is permeated with fraud or that the candidate participated in, or can be charged with knowledge of, fraudulent activity” (Matter of Mattice v Hammond, 131 AD3d 790, 790 [3d Dept 2015] [internal quotation marks and citations omitted]). “[T]he fraud need not permeate the entire petition if the candidate was involved with or knew of the fraud, and the petition may be invalidated even if it contains a sufficient number of valid signatures independent of those fraudulently procured” (Matter of Valenti v Bugbee, 88 AD3d 1056, 1057 [3d Dept 2011] [internal quotation marks omitted]; cf. Matter of Felder v Storobin, 100 AD3d 11, 16 [2d Dept 2012] [“a single instance of fraud by a candidate does not necessarily require the invalidation of an entire otherwise-sufficient designating petition as a matter of law”]).
In alleging that the respondent candidate engaged in fraud, petitioners focus on his attestations that the signers “subscribed to th[e] petition ... in [his] presence . . . and identified *705 himself/herself to be the individual who signed the sheet.” Petitioners argue that the admissions made by the respondent candidate in his answer and at the hearing establish the falsity of his representation that Anne Haynes and Anthony Roma signed the petition in his presence.[3] Petitioners also rely upon authorities holding that a “mistaken belief” regarding the authority of a person to sign for another cannot excuse a fraudulent witness attestation (Mattice, 131 AD3d at 791; see also Valenti, 88 AD3d at 1058).
While a finding of fraud in the designating process “does not require proof of a ‘nefarious motive’ ” on the part of the candidate (Mattice, 131 AD3d at 791, quoting Valenti, 88 AD3d at 1058), it does require proof of a knowingly or intentionally false statement (see Mattice, 131 AD3d at 791 [“(candidate) signed the witness statement . . . despite knowing that such statement was false”]; Valenti, 88 AD3d at 1058 [“(candidate) signed the witness statements despite knowing that those statements were materially false”]).
The unchallenged testimony of the respondent candidate, which the court finds credible in all material respects, establishes that he signed the witness statements and filed his designating petition believing the attestations to be truthful. It was the respondent candidate’s understanding that a person holding a POA on behalf of an incapacitated family member stands in the shoes of the incapacitated person, and that a signature given in his presence by the POA holder was the legal equivalent to the incapacitated person having signed the petition in his presence. For this reason, the respondent candidate held a good faith belief that he was being truthful in representing that Anne Haynes and Anthony Roma legally “subscribed to th[e] petition ... in [his] presence” through their POA holders.
Given that the respondent candidate’s witness statement was not knowingly or intentionally false when made or when the petition was filed, this case is distinguishable from Mattice, Valenti and other cases cited by petitioners. While the candidate in Mattice mistakenly believed that spouses could sign petitions for one another, he admitted to having know *706 ingly and falsely attested in the witness statement “that each individual signed his or her name in his presence” (131 AD3d at 791). And this certainly is not a case like Valenti, where the candidate knew the proxy signatures he collected were improper, but signed the witness statement and filed the petition anyway (88 AD3d at 1057-1058). Here, the respondent candidate not only believed that a POA could legally authorize an individual to sign for another, he also believed that a signature by a POA holder given in his presence constituted the principal’s “subscri[ption] to th[e] petition ... in [his] presence.”
Also weighing against a finding of fraud is the absence of a clearly established process for designating petitions to be signed by voters who are physically unable to sign because of illness or disability. The Election Law makes special provision for these individuals to register to vote (§ 5-216 [1]), obtain absentee ballots (§ 8-400 [7]), and cast ballots at polling places (§ 8-304 [2]), but similar accommodations are not provided in the statutes governing the designation and nomination of candidates. Further, the use of powers of attorney in Election Law matters is unclear.[4] Under the circumstances, the respondent candidate’s testimony regarding his understanding of how the statutory witness statement applied to a signature taken from a POA holder on behalf of an eligible voter is plausible and credible (cf. Matter of Buchanan v Espada, 230 AD2d 679, 680 [1st Dept 1996] [“deliberate inattention” to rampant fraud]).
The court emphasizes that the narrow issue before it is not whether the two signatures given by the POA holders are valid under the Election Law, or even whether the attestations made *707 by the respondent candidate as witness to the two signatures are correct. Petitioner’s sole claim is one of fraud with respect to the attestations. To invalidate the entire designating petition on that basis, petitioners must come forward with clear and convincing proof of a knowingly false attestation by the respondent candidate. This they have failed to do.
Finally, even with the benefit of hindsight, it is not apparent how the respondent candidate should have proceeded in his effort to, in his words, respect the rights of “people with serious medical issues wanting to participate in the political process.” For this reason, the court uses the occasion of this decision to encourage the state legislature and the SBOE to consider appropriate amendments to law, rule or regulation to ensure that voters who are physically unable to sign because of illness or physical disability can participate fully in the process of designating and nominating candidates to office.
Conclusion
Accordingly, it is ordered and adjudged that the relief sought in the verified petition is denied in all respects, and this proceeding is dismissed.

. The SBOE appeared on the return with certified copies of the relevant records, but advised the court that it takes no position on the issues raised by the petition.

. The respondent candidate sought to introduce a purported copy of the power of attorney for Anne Haynes, but there was no foundation for the admission of the document and no claim that the respondent candidate was in possession of the document when the signature was collected or when the petition was filed.

. The petition also makes reference to a third signature allegedly executed by a family member (see ¶ 19), but respondent candidate denied the allegation, and petitioners did not adduce any proof at the hearing to support the allegation. Under the circumstances, the court deems the allegation abandoned.

. Petitioners appear to take issue with the failure of the respondent candidate to have the POA holders sign as agents and annex copies of the POAs to the designating petition (mem of law ¶¶ 9-10), but this would not address their claim of false witness attestation, and any deviation from the form of the statement prescribed by Election Law § 6-132 (2) would itself invite legal challenge. Moreover, while the General Obligations Law broadly permits an “agent to act as an alter ego of the principal with respect to any and all possible matters and affairs” (§ 5-1502N), this authority is available only with respect to matters that “the principal can do through an agent” (id.). The Court of Appeals has upheld the use of powers of attorney in certain Election Law matters (see e.g. Matter of Arens v Shainswit, 29 NY2d 663 [1971] [candidate’s consent to fill vacancy under predecessor to Election Law § 6-148 (5)]), but the limits of this authority are unclear (cf. Ohio Rev Code Ann § 3501.382 [allowing disabled voter to designate attorney-in-fact “to sign that voter’s name to the petition ... at the voter’s direction and in the voter’s presence” in accordance with rigorous safeguards]).